HAIGHT BROWN & BONESTEEL LLP
PETER A. DUBRAWSKI SBN 65677
pdubrawski@hbblaw.com
KEITH M. ROZANSKI SBN 232330
krozanski@hbblaw.com
555 South Flower Street, 45th Floor
Los Angeles, CA 90071
Telephone:  213.542.8055
Facsimile:  213.5423.8100

TUCKER ELLIS LLP
JEFFREY A. HEALY (Admitted Pro Hac Vice)
jeffrey.healy@tuckerellis.com
950 Main Ave., Suite 1100
Cleveland, OH 44113
Telephone:  216.592.5000
Facsimile:  216.592.5009

TUCKER ELLIS LLP
PEGGY S. DOYLE SBN 176483
peggy.doyle@tuckerellis.com
One Market Plaza
Steuart Tower, Suite 700
San Francisco, CA 94105
Telephone:  415.617.2400
Facsimile:  415.617.2409

Attorney for Defendant
TEXTRON INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON LEGHART, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>TEXTRON, INC., a Delaware corporation; E-Z-GO GOLF CARS, a Textron company; and DOES 1 through 50 inclusive,,<br><br>    Defendants. | Case No. 3:14-cv-01226-BAS-JMA<br><br>**JOINT MOTION OF THE PARTIES TO RESOLVE DISCOVERY DISPUTE RE: EXPERTS**<br><br>The Hon. Cynthia A. Bashant<br><br>Disc. Cutoff:      September 6, 2015<br>Motion Cutoff:  January 8, 2016<br>Trial Date:         July 5, 2016 |

TE15-0000014
11686832.1

Case No. 3:14-cv-01226-BAS-JMA
JOINT MOTION OF THE PARTIES TO
RESOLVE DISCOVERY DISPUTE RE: EXPERTS

1

Defendant Textron Inc. ("Defendant"), by and through their attorneys of record, Haight Brown & Bonesteel LLP and Tucker Ellis LLP, and Plaintiff Shannon Leghart ("Plaintiff"), by and through her attorneys of record, Gomez Trial Attorneys and Yuhl | Carr LLP (collectively "The Parties"), bring this Joint Motion to resolve a discovery dispute.

## I.
## DISCOVERY DISPUTE

This is a product liability case against a manufacturer of a golf car that was filed in April 2014. Trial is currently set to begin on July 5, 2016. Plaintiff claims that a defective steering assembly broke while in use resulting in serious injuries.

Defendant desires to supplement its expert designation to include statistics and data sciences expert, Duane L. Steffey, Ph.D. to rebut plaintiff's claims that Defendant "selected a low cost and quality die casting process" for the steering assembly "in order to maximize profits over safety." Defendant intends to put forth Dr. Steffey to offer opinions related to his statistical analysis of data related to the steering assembly including the assembly's design, manufacture of replacement parts, warranty claims, sales, cost and profit. Plaintiff believes that Defendant should not be allowed to supplement its expert designation.

## II.
## MEET AND CONFER

Counsel for the parties have met and conferred regarding the matters set forth in this Joint Motion as set forth in Local Rule 26.1a.

## III.
## DEFENDANT'S POSITION

Defendant contends that good cause exists for granting leave to designate a statistics and data sciences expert. Defendant designated experts on January 23, 2015. Attached as Exhibit 1 is a copy of Defendant's First Designation of Experts. Supplemental designation was due no later than February 6, 2015 per Court Order.

As a courtesy to the Court attached as Exhibit 2 is a copy of the Court's September 3, 2014 Scheduling Order containing these expert designation dates.

On February 18, 2015, Plaintiff responded to contention interrogatories propounded by Defendant. Attached as Exhibit 3 is a copy of Plaintiff's Responses to Interrogatories. In response to interrogatories seeking to discover the contentions which form the basis of her claims, plaintiff stated that Defendant "purposefully selected a low cost and quality die casting process…in order to maximize profits over safety" and that Textron "valued profit over consumer safety." Exhibit 2 at page 10, lines 24 to page 11, line 6 and page 16, lines 11 to 16.  In response, Defendant wishes to designate statistics and data sciences expert, Duane L. Steffey, Ph.D.  Attached as Exhibit 4 is a copy of Defendant's proposed Supplemental Designation.  Dr. Steffey is expected to offer opinions related to his statistical analysis of data related to the steering assembly utilized in the model golf car at issue in this litigation including, but not limited to, the manufacture of replacement parts, warranty claims, sales, cost and profit.  Dr. Steffey's testimony is necessary to rebut Plaintiff's contention that Defendant utilized the subject steering assembly design in an effort to maximize profit to the detriment of consumer safety.

The testimony in this case is that over a period of approximately 16 years approximately 94,000 replacement parts for the steering assembly, including the housing in question, were manufactured.  Defendants have produced what documents exist in their records including a summary representing the entire amount (E-Z-GO 0006063, also Exhibit 32 to the deposition of Jim Fisher) and E-Z-GO documents 0006511 through 0006562, inclusive.)

Other than the warranty data already provided, defendants have no documents in their records which would reflect the reasons for these replacements.

Counsel for Textron in this litigation directed that a list of all the customers that could be determined from the records be made with contact information.  Then, in further anticipation of and in preparation for this litigation, counsel directed

1  contact with as many of the customers as could be located to inquire for the reasons
2  for the customers' purchase of the replacement parts.
3        Defendants are mindful that there must be a sufficient random sampling in
4  order to establish a statistical significance to serve as a basis for Dr. Steffey's
5  analysis.  Given that there were 94,000 replacement parts over a 16-year period,
6  development of this information has only recently been accomplished.
7        Defendants have appropriately responded to all discovery requests on these
8  issues.  Additionally, even though the documents generated were at the direction of
9  counsel, and therefore are work product, defendants have offered to share those
10 documents with plaintiff's attorneys at this point in time so that they can counter-
11 designate their expert.
12       Plaintiff will not be prejudiced if Defendant is permitted to supplement it
13 designation.  The supplemental designation is based upon plaintiff's own
14 contentions, or theories, of liability. Trial is not currently scheduled to take place
15 until July 5, 2016, almost a full year from now. And Defendant is willing to stipulate
16 to allow Plaintiff to supplement her designation to counter designate if she chooses.
17 Pursuant to Court Order, plaintiff is not required to serve expert disclosures until
18 September 20, 2015.  Attached hereto as Exhibit 5 is a copy of the Court's Order of
19 April 10, 2015 Modifying Scheduling Order Dates identifying the September 20,
20 2015 disclosure date. Plaintiff has more than sufficient time to counter designate an
21 expert and prepare for expert disclosures.  This situation is no different than the
22 request by the plaintiff to supplement her experts by adding an expert in a field
23 (human factors) not contemplated by the defendant.
24       Should the supplemental designation be denied by the Court, Defendant will
25 be prejudiced in its ability to rebut one of Plaintiff's main theories—that is—
26 Defendant caused Plaintiff's injury because it was motivated by profit, choosing to
27 utilize an inferior design of key parts in the manufacture and assembly of the model
28 golf car at issue in this personal injury action.

TE15-0000014
11686832.1

4

Case No. 3:14-cv-01226-BAS-JMA
JOINT MOTION OF THE PARTIES TO
RESOLVE DISCOVERY DISPUTE RE: EXPERTS

## IV.

## PLAINTIFF'S POSITION

### A. Defendant Fails To Establish Good Cause for This Untimely Request to Augment Experts

Defendant fails to establish good cause for the delay in designating an expert to discuss the statistical analysis on the manufacture of replacement parts, warranty claims, sales, cost and profit pertaining to the steering part at issue. Defendant has known from the inception of this lawsuit Plaintiff's theories and contentions regarding E-Z-Go Textron selecting a low cost and quality die casting process for their steering component, which had a high failure rate. In fact, there have not been any new theories set forth in discovery that were not set forth in the complaint. Plaintiff's complaint filed in April 2014, set forth these theories as follows:

*18.    From approximately 1994 to 2008, E-Z-GO manufactured and sold over 550,000 golf cars equipped with this unsafe steering assembly and housing design.*

*19.    E-Z-GO admits under oath that from 1995 to approximately 2010, it sold at least 48,000 replacement housings which Plaintiff alleges on information and belief were largely due to fracture and failure.*

*20.    E-Z-GO admits under oath that from 1995 to 2010 it has also replaced an additional 51,000 complete steering assemblies which had incorporated the unsafe housing. Plaintiff alleges on information and belief a significant portion of these replaced assemblies was also due to fracture and failure of the housing.*

*21.    At the time of the manufacture, sale and distribution of the subject TXT golf car involved in this accident, Defendants, and each of them: (a) knew the aluminum die cast housing component part was prone to fail under foreseeable and anticipated operating conditions; (b) knew a failed housing posed a potential safety risk/crash hazard; (c) knew the housing was defective in design due to requiring die casting of a 380 aluminum alloy part; (d) knew die casting of the 380 aluminum*

*alloy created undetectable unsafe variations from part to part in tensile strength and material properties; (e) knew the die casting process makes essentially brittle aluminum parts even more brittle; (f) purposefully selected a low cost and quality die casting process for the aluminum housing in order to maximize profits over safety given the "anticipated volume of golf car production" according to one company engineer; (g) failed to warn consumers that the housing was failure prone upon bump steering and/or moderate front wheel impact and/or sharp turning; (g) failed to warn consumers that when the housing fails, the car experiences a loss of steering control; (h) failed to warn consumers that a loss of steering control creates a crash hazard and a risk of injury to the consumer; (i) knew that even though E-Z-GO schematics for the housing called for a finished die cast housing meeting ASTM specifications for a 380 aluminum alloy part, a significant portion of E-Z-GO housings did not meet that specification due to variations inherent in the die casting manufacturing process; (j) re-designed the TXT steering assembly to eliminate the failure prone housing component part in all new TXT models staring 2002; and (k) failed to warn pre-2001 consumers that the housing was being eliminated in all new 2002 TXT cars due to warranty claims, failure incidents, and safety considerations.*

As set forth above, Defendant knew of Plaintiff's theories well before Defendant's initial expert designation on January 23, 2015, in which they disclosed **seventeen experts.** And there have been multiple times since that point where Defendant could have sought this relief. Plaintiff's discovery responses that purportedly gave rise to the need for defendant to supplement its experts were served almost six months ago. There is no reason Defendant would be surprised at this point in discovery regarding Plaintiff's theories, and nothing has occurred that would give rise to the sudden need for an eighteenth retained expert.

## B. Granting Defendant Leave to Add Another Expert Would Be Unduly Prejudicial to Plaintiff's Case

Granting Defendant leave to designate a new expert at this late stage of the litigation would be unduly prejudicial to Plaintiff's case due to the impending discovery and expert deadlines. Percipient Discovery cutoff is September 9, 2015. The deadline to exchange expert reports pursuant to FRCP 26 (a)(2) is September 21, 2015. There is simply no time for Plaintiff to find a rebuttal expert, get him or her up to speed, and have a report prepared.

Further, Defendant has not adequately responded to written discovery propounded on the topics for which they now seek to designate an expert. Specifically, Defendants have been asked in discovery to provide information on the failure rates of the steering assembly utilized in the model golf car at issue in this litigation. See Plaintiff's Special Interrogatory No. 11 below:

*INTERROGATORY NO. 11:*

*What were the failure rates of the steering assembly DESIGN including any component STEERING HOUSING used on the BRADLEY CAR?*

Defendant simply objected to the request, and said they were unable to answer the interrogatory. Plaintiff has also attempted to set depositions for the person(s) most knowledgeable regarding failure rates of the steering housing at issue. Defense counsel said the earliest available date for these deposition is the week of August 17th.

With expert deadlines and discovery cutoff approaching in September, it would be unduly prejudicial for Defendant to designate an expert on the very issues to which they have failed to respond at this point in discovery.  For the reasons set forth above Plaintiff requests the court deny Defendant's request for leave to add an expert.

# V.

# JOINT SIGNATURES

Pursuant to the ECF Rules for the U.S. District Court for the Southern District of California, Section 2(f)(4), the contents of this Joint Motion are acceptable to all signators.

DATED: August 5, 2015            **GOMEZ TRIAL ATTORNEYS**

                                 By:   s/Jeremiah A. Lowe, Esq.
                                       JOHN H. GOMEZ
                                       JEREMIAH A. LOWE
                                       ALLISON C. WORDEN
                                       JESSICA T. SIZEMORE

                                 **YUHL | CARR LLP**
                                 ERIC F. YUHL
                                 JAMES P. CARR
                                 CHRISTOPHER P. YUHL

                                 *Attorneys for Plaintiff Shannon Leghart*

DATED: August 5, 2015            **HAIGHT BROWN & BONESTEEL LLP**

                                 By:   s/Peter Dubrawski
                                       PETER DUBRAWSKI
                                       KEITH ROZANSKI

                                 **TUCKER ELLIS LLP**
                                 PEGGY S. DOYLE
                                 JEFFREY A. HEALY

                                 *Attorneys for Defendant Textron Inc.*